**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

MAX P. KITCHEN,

                Petitioner,

v.                                CIVIL ACTION NO.  2:10-cv-01264

DAVID BALLARD,

                Respondent.

**ORDER**

This Petition for Habeas Corpus relief under 28 U.S.C. § 2254 was filed on October 27, 2010.  The Petition was referred to the Honorable Mary E. Stanley, United States Magistrate Judge, for submission to this court for proposed findings of fact and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).  The respondent filed a Motion for Summary Judgment on January 24, 2011 [Docket 18].  The Magistrate Judge has submitted findings of fact and has recommended that the court deny the Petition for Habeas Corpus relief.

Thereafter, the petitioner filed timely Objections to the Proposed Findings and Recommendation [Docket 19].  The court has reviewed *de novo* those portions of the Proposed Findings and Recommendation to which the petitioner has filed specific objections.  For the reasons set forth below, the court **FINDS** that the petitioner's objections lack merit.  Accordingly, the court **ADOPTS** and incorporates herein the Magistrate Judge's Proposed Findings and Recommendation, **GRANTS** the respondent's Motion for Summary Judgment

[Docket 15], and **ORDERS** that the Petition for Writ of Habeas Corpus be **DISMISSED** and **STRICKEN** from the docket of this court [Docket 3].

I.     **Background**

After *de novo* review of those portions of the Magistrate Judge's report to which objections were filed, the court **ADOPTS** the statement of facts and procedural history set forth in the Proposed Findings and Recommendation.   The detailed account provided by the Magistrate Judge therein requires only a brief summary here.

A.     *Background*

On the evening of October 1, 1995, the petitioner Max Kitchen, along with James Hank Mosley, Brian Lambert, Rodney Nelson, and Jake White were drinking beer at Tommy Miller's house in Logan County, West Virginia.   Carl Starkey and Andrew Caldwell drove by Miller's house on a four-wheeler.   At trial, Mosley testified that when he and Kitchen saw the two drive by, they talked about "whipping their ass for stealing our weed."   (Trial Tr., 43, June 5, 1996 [Docket 15-10].)   Kitchen and Mosley then went to their homes to get aluminum baseball bats. Mosley locked the gate leading out of the hollow so Starkey and Caldwell would have to drive down a path along the creek bed where Kitchen and Mosley would be hiding.   The other men remained nearby.   As Starkey and Caldwell drove along the creek bed, Kitchen and Mosley jumped out and attacked them with the baseball bats.   Kitchen attacked Caldwell.  Brian Lambert testified that he saw Caldwell on his knees with one hand held out and Kitchen bringing the bat away from Caldwell's arm.   Rodney Nelson said he saw Kitchen strike Caldwell in the head. Kitchen allegedly struck Caldwell in the head two more times until Caldwell was lying face down in the creek.   Starkey, who had been struck by Mosley, fell unconscious.   Before leaving the two men, Thomas Miller and Starkey pulled Caldwell out of the water.   Starkey and Caldwell

were then taken to the hospital, and Caldwell died five days later.  The coroner testified that Caldwell died of multiple blunt force injuries to the head.

      B.    *State Proceedings*

In January 1996, Kitchen was indicted by a Logan County Grand Jury on one count of First Degree Murder, one count of Malicious Assault, one count of Conspiracy to Commit Murder in the First Degree, and one count of Conspiracy to Commit Malicious Assault. Approximately three days before trial, co-defendant Mosley entered into a plea agreement in exchange for testifying against Kitchen.  He pled guilty to malicious assault of Starkey, conspiracy to commit malicious assault, and cultivation of marijuana (which had not been charged in the indictment, but was brought by way of an information).  On June 6, 1996, after a jury trial, the petitioner was convicted of one count of First Degree Murder, without a recommendation of mercy, and one count of Conspiracy to Commit Malicious Assault.  Kitchen was not found guilty of Malicious Assault.  The State did not go forward with its Conspiracy to Commit Murder in the First Degree charge.

On January 30, 1997, the petitioner's lawyer, Logan County Assistant Public Defender Kelly Codispoti, filed a Petition for Appeal in the Supreme Court of Appeals of West Virginia ("SCAWV"), which was refused on September 3, 1997.  On August 27, 1998, Kitchen, by new counsel, Matthew L. Clark, filed a Petition for a Writ of Habeas Corpus in the Circuit Court of Logan County.   Following an evidentiary hearing, the Circuit Court denied the petitioner's habeas corpus petition on January 3, 2003.  With new counsel, Carrie L. Webster, Kitchen filed a Petition for Appeal from the denial of the Circuit Court habeas corpus petition, and later he filed a Motion to Supplement the Record.  The SCAWV granted the Motion to Supplement and remanded the case to the Circuit Court of Logan County on October 9, 2003.  On August 25,

2005, the Circuit Court conducted an omnibus habeas corpus hearing.  It entered an order on August 29, 2007, denying the Petition for a Writ of Habeas Corpus.  Kitchen then filed a Petition for Appeal, which was granted on November 12, 2008.  The SCAWV affirmed the findings of the Circuit Court on June 7, 2010.  Kitchen's Petition for Rehearing was denied on September 22, 2010, and the SCAWV entered a final order affirming the Circuit Court's findings on September 30, 2010.  Proceeding pro se, Kitchen filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 on October 27, 2010.

## II.    Standard of Review

### A.    *Federal Habeas*

As amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254 severely curtails the power of federal courts to grant writs of habeas corpus to prisoners in state custody.  *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011).  Namely, § 2254(a) provides that federal courts may only entertain petitions for habeas corpus based on the claim that a state prisoner "is in custody in violation of the Constitution or law or treaties of the United States."  In addition, AEDPA imposes "several procedural obstacles" on petitioners. *See Wolfe v. Johnson*, 565 F.3d 140, 160 (4th Cir. 2009).  Section 2244(d)(1) dictates a one-year limitations period in which a person in state custody must bring a habeas petition in federal court.  And § 2254(b) and § 2254(c) prohibit federal courts, with limited exceptions, from granting a writ of habeas corpus to a state prisoner unless he has exhausted his remedies in state court.

Moreover, AEDPA significantly circumscribes a federal court's review of the merits of a state prisoner's habeas petition.  Specifically, 28 U.S.C. § 2254(d) provides that:

- 4 -

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). This is a "difficult to meet[]" standard. *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011). Moreover, it is a "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (internal quotation marks and citation omitted). The deference required by § 2254(d) applies even when the state court summarily denied relief instead of providing a written opinion explaining its reasoning. *Harrington*, 131 S. Ct. at 784 ("Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden must be met by showing that there was no reasonable basis for the state court to deny relief."). In other words, under § 2254(d), federal habeas courts "review the result that the state court reached, not whether its decision was well-reasoned." *Wilson v. Ozmint*, 352 F.3d 847, 855 (4th Cir. 2003) (internal quotation marks and alteration omitted).[1]

The "contrary to" prong of § 2254(d)(1) is implicated only where the state court (1) "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or (2) "confronts facts that are materially indistinguishable from a relevant Supreme Court

---

[1] In addition, the Supreme Court recently clarified that "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits," with no consideration of any evidence submitted to the federal court in the first instance. *Cullen*, 131 S. Ct. at 1398-99.

precedent and arrives at a result opposite to [the Supreme Court]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

Under the "unreasonable application" prong of § 2254(d)(1), by contrast, a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 131 S. Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 642, 664 (2004)). Thus, "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id.* at 785 (internal quotation marks omitted). To warrant federal habeas relief, the state court's application must be "objectively unreasonable," which imposes a "substantially higher threshold for obtaining relief than *de novo* review." *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010) (internal quotation marks omitted). Moreover, it is not an unreasonable application of federal law if a state court declines to apply a "specific legal rule that has not been squarely established by [the Supreme] Court." *Knowles v. Mirzayance*, 129 S. Ct. 1411, 1419 (2009); *see also Williams*, 529 U.S. at 412 (explaining that "clearly established Federal law" refers to the "holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision").

Finally, under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 130 S. Ct. 841, 849 (2010). Thus, "even if reasonable minds reviewing the record might disagree about the finding in question," a federal habeas court may not conclude that the state court decision was based on an unreasonable determination of the facts. *Id.* (internal quotation marks and alteration omitted).

As these principles make clear—and as the Supreme Court reiterated this past Term—§ 2254(d) imposes a powerful limit on the relitigation of claims that have already been rejected by state courts:

> [Section 2254(d)] preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Harrington*, 131 S. Ct. at 786-87. A habeas petitioner proceeding under § 2254 bears the burden of showing that he is entitled to habeas relief under this highly deferential standard. *Cullen*, 131 S. Ct. at 1398.

Finally, AEDPA provides that "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.* § 2254(e)(1). "Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." *Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir. 2010). This is especially true where state courts have "resolved issues like witness credibility, which are 'factual determinations' for purposes of Section 2254(e)(1)." *Id.* Put simply, § 2254(e)(1) "reflects Congress's view that there is no reason for a do-over in federal court when it comes to facts already resolved by state tribunals." *Id.* Accordingly, this court may not "casually cast aside" a state court's factual findings. *Id.*

B.    *Summary Judgment*

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Although the court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his favor."  *Anderson*, 477 U.S. at 256.  Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position.  *Anderson*, 477 U.S. at 252.  Likewise, conclusory allegations or unsupported speculation, without more, are insufficient to preclude the granting of a summary judgment motion.  *See Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir.1987).

C.    *Magistrate Judge's Recommendations*

When a Magistrate Judge issues a recommendation on a dispositive matter, the court reviews *de novo* those portions of the Magistrate Judge's report to which specific objections are filed.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).  When a party files an objection that is

too general or conclusory to focus attention on any specific error supposedly committed by the Magistrate Judge, the court need not conduct a *de novo* review.  *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 316 (4th Cir. 2005); *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).  Moreover, when a party fails to object to a portion of the Magistrate Judge's Report, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.  *See Diamond*, 416 F.3d at 315.

## III.   Discussion

### A.  *Ground One*

In Ground One of his § 2254 petition, the petitioner contends that he received ineffective assistance of trial and appellate counsel by Ms. Kelly Codispoti.  Kitchen asserts that Ms. Codispoti failed to: (1) present mitigating evidence; (2) present a consistent defense or trial strategy; (3) make an opening argument; (4) effectively cross-examine the State's witnesses; (5) request the court to bifurcate the trial; (6) ask for mercy in closing argument; (7) cite *State v. McGinnis*, 193 W.Va. 147 (1994) at the appellate stage in objecting to the admissibility of prior bad acts; (8) request oral argument on appeal; (9) advise Kitchen on the implications of a guilty plea; (10) conduct a preliminary hearing for discovery; (11) be prepared with applicable case law at a pretrial hearing; and (12) object to the court's introduction of Mosley's plea to cultivation of marijuana.

The Circuit Court of Logan County, in its August 29, 2008 order, found that Ms. Codispoti's failure to move to bifurcate the trial, failure to call character witnesses in mitigation, failure to argue for mercy, and failure to object to the State's argument for mercy were deficient under an objective standard of reasonableness.  The court found, however, that absent these failures, there was no reasonable probability that the result of trial would have been different.  In

its June 7, 2010 opinion, the SCAWV affirmed the Circuit Court, but found that Ms. Codispoti's performance was not deficient.

The Sixth Amendment to the U.S. Constitution guarantees that in "all criminal prosecutions, the accused shall enjoy the right . . . to have Assistance of Counsel for his defense."   When an attorney's performance falls below a minimum level of professional competence, it may violate his client's right to effective representation.  *See Strickland v. Washington*, 466 U.S. 668, 685 (1984).

The Supreme Court has established a two-prong test for determining when an attorney's performance violates a defendant's Sixth Amendment right to effective representation.  *Id.* at 687.   The party asserting ineffective assistance of counsel bears the burden of proving both prongs by a preponderance of the evidence.  *Id.* at 687.  The first prong of the Supreme Court's *Strickland* test requires a defendant (here the petitioner) to show that his attorney committed an error that fell below a reasonable standard for professional competence.  *See id.*   The reasonableness standard is an objective test, which contemplates a wide range of acceptable professional representation.  *See id.* at 689.  The second prong of the *Strickland* test requires a defendant to show that "but for [the attorney's] unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  In applying the *Strickland* standard, courts must be "highly deferential" to the attorney's performance and the defendant must rebut the presumption that the challenged action "might be considered sound trial strategy."  *Id.* at 689.

The court will address each alleged error in turn.  First, the decision whether to present mitigating evidence is often a tactical one.  *See Darden v. Wainright*, 477 U.S. 168, 186 (1986) (explaining that the trial counsel reasonably relied on a simple plea for mercy rather than present mitigating evidence because doing otherwise would have "opened the door for the State to rebut

with evidence of petitioner's prior convictions").  The Supreme Court most recently addressed the failure to present mitigating evidence in *Wiggins v. Smith*, 539 U.S. 510 (2003).  In that case, the Court found that the defendant's counsel did not conduct a reasonable investigation into the defendant's background.  The Court described the mitigating evidence that would have been discovered had a reasonable investigation occurred as "powerful."  *Id.* at 534-35.  The defendant had "the kind of troubled history [the Supreme Court has] declared relevant in assessing a defendant's moral culpability."  *Id.*

Here, the record indicates that Ms. Codispoti interviewed and subpoenaed for trial a number of character witnesses.  The only mitigating evidence that Kitchen presented was his mother's testimony at the second omnibus hearing.  She testified that Kitchen had no prior criminal history, that he had a job, that he was the primary caretaker for his young daughter, and that he was a "kind person" to others.

When asked about the failure to present mitigating evidence, Ms. Codispoti stated that she discussed with Kitchen whether to put his character in issue and as a strategic matter, they decided against it.  She further explained that she was concerned that other potential character witnesses smoked marijuana with the petitioner and knew that he grew it.  Ms. Codispoti also recalled certain witnesses stating that Kitchen had been involved in a baseball bat altercation in the past.  Finally, she testified that Kitchen was not forthcoming with her throughout trial preparation.

Related to the failure to present mitigating evidence, Kitchen points to Ms. Codispoti's failure to request bifurcation and failure to ask for mercy in closing arguments.  As the SCAWV noted, the decision not to present mitigating evidence obviated the need for a bifurcated trial.

Additionally, without any mitigating evidence, Ms. Codispoti did not have a basis to support a plea for mercy during her closing argument.

Next, Kitchen asserts that he received ineffective assistance of counsel because Ms. Codispoti elected not to make an opening statement.  Waiving an opening statement is essentially a tactical decision and one that is not objectively unreasonable.  *Huffington v. Nuth*, 140 F.3d 572, 583 (4th Cir. 1998).  Ms. Codispoti explained that she deferred her opening statement to see how the State's evidence unfolded.  She then elected not to give an opening statement before the defendant's case-in-chief because she wanted inconsistencies in the State's case to go unanswered until closing arguments.

Kitchen also argues that Ms. Codispoti failed to effectively cross-examine the State's witnesses.  Specifically, Ms. Codispoti did not elicit medical evidence from the State's witnesses to support her theory that the injuries sustained by Caldwell were inconsistent with the testimony of how the petitioner allegedly struck Caldwell.  The medical expert that Ms. Codispoti contacted, however, agreed with the State's witnesses' theory.  Therefore, she did not have any grounds to elicit evidence of inconsistency.  According to Kichen, Ms. Codispoti failed to highlight that only one eyewitness testified to seeing the petitioner strike the victim in the head.  Additionally, the petitioner contends that Ms. Codispoti should have established that he pulled Mosley off of Starkey because he was afraid that Starkey would drown and that there was no intent to kill anybody.

The respondent, in his Motion for Summary Judgment, points to several examples where Ms. Codispoti highlighted inconsistencies and weaknesses in the State's case on cross-examination.  When cross-examining Brian Lambert, Ms. Codispoti elicited testimony that he did not actually see Kitchen strike Caldwell; he only saw him with the bat away from Caldwell's

arm.  Rodney Nelson admitted on cross-examination that when he first talked to a trooper about the incident, he did not tell him everything he knew about the case because he was scared.  Ms. Codispoti directly asked Tommy Miller, "Did you and Jake and Rod discuss this and say that we're going to pin this on Max?"  (Trial Tr., 215-16, June 4, 1996 [Docket 15-9].)

The petitioner further asserts that Ms. Codispoti maintained an inconsistent defense theory.  Kitchen explains that one theory was that Kitchen did not commit the murder and the other was a self-defense theory.  The SCAWV noted that "[o]rdinarily, self-defense is not available to the aggressor in an affray who precipitates it without legal justification."  *State v. Watson*, 164 W. Va. 642, 651 (1980).  Because the evidence at trial was that Kitchen precipitated the fight without legal justification, the SCAWV found that "it was not ineffective assistance of counsel not to develop a theory of self-defense."  *State ex rel. Kitchen v. Painter*, 226 W. Va. 278, 287 (2010).  Addressing the defense that Kitchen did not commit the murder, the SCAWV found that "counsel attempted to create reasonable doubt by revealing alleged inconsistencies in the witnesses' accounts of the murder as well as the discrepancies between eyewitness testimony and the medical evidence."  *Id.*

Turning to Ms. Codispoti's performance on appeal, Kitchen alleges that "Ms. Codispotti failed to identify or present the [SCAWV] with a discussion and analysis of the West Virginia state case of *State v. McGinnis*, 193 W.Va. 147 (1994)."  (Petition, 23 [Docket 3].)  *McGinnis* addresses West Virginia Rule of Evidence 404.[1]  Relatedly, Kitchen contends that Ms. Codispoti did not object to the court's introduction of Mosley's plea to cultivation of marijuana.  The

---

[1] Part (b) states: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he or she acted in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial." W. VA. R. EVID. 404(b).

- 13 -

SCAWV found that because the evidence of prior bad acts was properly admitted under West Virginia's evidentiary rules, the failure to discuss this case in the petition did not prejudice Kitchen.  The SCAWV also found that Mosley's plea was properly admitted.

Next, Kitchen claims that Ms. Codispoti was ineffective because she did not request oral argument on appeal.  The decision whether to request oral argument on appeal is a tactical one, and the petitioner does not explain how such failure prejudiced him.

Kitchen then states that, "Ms. Codispoti did not advise or explain to him the implications of a plea offer by the State to plead guilty to first degree murder with a recommendation of mercy."  (*Id.*)  He does recall, however, that Ms. Codispoti told him about the plea offer.  It is apparent from the testimony at the first and second omnibus hearings that Ms. Codispoti conveyed the plea offer, discussed it with the petitioner, and recommended that he take the plea offer, but that the petitioner was not interested in accepting it.  Kitchen may now regret his decision, but Ms. Codispoti's conduct fell within the standards of defense function concerning plea discussions.  *See* ABA STANDARDS FOR CRIMINAL JUSTICE, DEFENSE FUNCTION, STANDARD 4-6, 2.

Kitchen also asserts that "Ms. Codispoti failed to conduct a preliminary hearing for purposes of discovery, despite the seriousness of the charges against her client" and that "Ms. Codispoti was not fully prepared and armed with applicable case law at a pretrial hearing one week prior to trial when the introduction of uncharged misconduct, i.e., cultivation of marijuana, was discussed."  (*Id.* at 24.)  The SCAWV found that the only specific example of case law that Ms. Codispoti failed to discuss was *State v. McGinnis*, and because the admission of marijuana cultivation was not improper, this failure was not prejudicial.  *State ex rel. Kitchen v. Painter*,

226 W. Va. 278, 288 (2010).  Moreover, the SCAWV stated that Kitchen waived his right to a preliminary hearing and therefore cannot complain of his counsel's failure to demand it.  *Id.*

The court's deferential assessment of counsel's performance includes "a context-dependent consideration of the challenged conduct as seen from counsel's perspective at the time." *DeCastro v. Branker*, 642 F.3d 442, 450 (4th Cir. 2011) (quoting *Wiggins v. Smith*, 539 U.S. 510, 523 (2003)) (internal quotation marks omitted).  Moreover, the court must "resist the temptation to second guess counsel's assistance" and "eliminate the distorting effects of hindsight." *Id.* (quoting *Strickland v. Washington*, 466 U.S. 668, 689 (1984)) (internal quotation marks omitted).   Taken together, the court **FINDS** that the petitioner's ineffective assistance of counsel claims are without merit.  Therefore, Kitchen is not entitled to habeas corpus relief under 28 U.S.C. § 2254 based on his *Strickland* claims.

B.  *Ground Two*

In Ground Two of his § 2254 petition, the petitioner asserts that fundamental fairness in the trial proceeding was impugned when the lower court allowed the introduction of Mosley's guilty plea and other evidence of prior bad acts.  Kitchen claims that the trial court did not hold the appropriate hearing to determine the admissibility of the evidence and that the court did not offer extrinsic evidence of the cultivation of marijuana.  He also contends that the trial court's limiting instruction concerning Mosley's testimony was confusing.  The instruction stated, in part:

> Members of the jury, you have heard evidence that the witness, James Hank Mosley, has plead guilty to crimes which arose out of the same events for which the defendant is on trial here and to the cultivation of marijuana.  You are reminded that [the petitioner] is not charged in this indictment with the cultivation of marijuana . . . You may consider [Mosley's] guilty plea only for the purpose of determining how much, if any at all, to rely upon his testimony.

- 15 -

(Trial Tr., 62, June 5, 1996 [Docket 15-10].)

In considering state evidentiary rulings in the context of federal habeas corpus, the court does not review the admissibility under state law "unless erroneous evidentiary rulings were so extreme as to result in a denial of a constitutionally fair proceeding." *Barbe v. McBride*, 521 F.3d 443, 452 (4th Cir. 2008) (quoting *Burket v. Angelone*, 208 F.3d 172, 186 (4th Cir. 2000)). "It is only in circumstances impugning fundamental fairness or infringing specific constitutional protections that a federal question is presented." *Id.* (quoting *Spencer v. Murray*, 5 F.3d 758, 762 (4th Cir. 1993)).

The SCAWV found that the evidence of Kitchen's marijuana cultivation was properly admitted. It noted that the trial court held a pre-trial hearing where it discussed admission of the evidence, and the court found that it was relevant on the issue of motive and its probative value outweighed any prejudicial effect. *State ex rel. Kitchen v. Painter*, 226 W. Va. 278, 292 (2010). Moreover, it acknowledged that although the trial court did not explicitly state that these prior bad acts were supported by a preponderance of the evidence, "the record shows that there was sufficient evidence to support the introduction of the evidence." *Id.* Additionally, the court found that the State was not required to produce physical evidence of the existence of the marijuana patch. *Id.* The SCAWV also found no error in admitting Mosley's guilty plea. *Id.* at 294.

The petitioner has not demonstrated that the admission of Mosley's plea and the evidence concerning marijuana cultivation was fundamentally unfair. Therefore, the court **FINDS** that the state courts' ruling was not contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. Accordingly, I **DENY** Kitchen's request for habeas corpus relief based on Ground Two of his petition.

C.  *Ground Three*

In Ground Three of his § 2254 petition, the petitioner argues that the State prosecutor's

remarks in closing argument were misleading and prejudicial, and violated his right to a fair trial.

The prosecutor stated:

> There was some mention made with regard to calling the police with regard to someone stealing pot.  Do we really believe that anyone who is guilty of the crime of cultivation of marijuana, a felony, is going to call the police and say hey, somebody's stealing my dope?  The State would submit to you that is not within the realm of possibility.

(Trial Tr., 47, June 6, 1996 [Docket 15-11].)

The Supreme Court has explained that when a due process claim concerns improper

argumentation, "[t]he relevant question is whether the prosecutor's comments so infected the

trial with unfairness as to make the resulting conviction a denial of due process."  *Darden v.*

*Wainwright*, 477 U.S. 168, 181 (1986) (internal quotation marks omitted).  Furthermore, the

Fourth Circuit has held that in assessing such a contention, a court is obliged to (1) determine

that the prosecutor's comments were actually improper, and (2) determine that the prosecutor's

comments were so prejudicial so as to deny the criminal defendant a fair trial.  *United States v.*

*Brockington*, 849 F.2d 872, 875 (4th Cir. 1988) (overruled on other grounds).

Viewing the closing argument in the context of the entire proceeding, the prosecutor's

comment did not infect the trial with unfairness such that the conviction was a denial of due

process.  Accordingly, I **FIND** that the state courts' decision was neither contrary to, nor an

unreasonable application of, clearly established federal law, and **DENY** the petitioner habeas

corpus relief under 28 U.S.C. § 2254 based on his claim of improper argumentation.

D.  *Ground Four*

In Ground Four of his § 2254 petition, the petitioner asserts that he was denied the right

- 17 -

to a fair and impartial jury because the trial court refused to strike for cause two potential jurors who had ties to the prosecutor.  As a result, defense counsel exercised two of the six peremptory strikes.  Moreover, Kitchen contends these two jurors' presence tainted the entire panel.

The Supreme Court has held that the failure to remove a juror for cause, with the result that the defendant had to use a peremptory challenge to remove the potential juror, does not violate a defendant's constitutional right to an impartial jury.  *United States v. Martinez-Salazar*, 528 U.S. 304, 307 (2000).  And Kitchen does not explain how these jurors' presence tainted the entire panel.  Therefore, the court **FINDS** that the state courts' ruling was neither contrary to, nor an unreasonable application of, clearly established federal law.  Thus, the respondent is entitled to summary judgment on Ground Four of the petitioner's § 2254 petition.[2]

E.  *Ground Six*

In Ground Six of his § 2254 petition, the petitioner contends that his Sixth Amendment rights to an impartial jury and effective assistance of counsel, and his Fourteenth Amendment right to a fair trial were violated because West Virginia law does not allow a trial court to instruct a jury on what factors it may consider in determining whether to recommend mercy in first degree murder cases.  Notwithstanding the failure to exhaust this claim, § 2254(b)(2) permits a court to deny a petition on the merits.

The Fourth Circuit has held that West Virginia's failure to provide guidelines for juries on whether to recommend mercy in first degree murder cases does not violate due process. *Billotti v. Legursky*, 975 F.2d 113, 117 (4th Cir. 1992).  The court stated that "[w]hether the jury exercises its judgment in a discretionary fashion or under guidance from the court seems . . .

---

[2] In Ground Five of his § 2254 petition, Kitchen asserts that "Petitioner's guarantees to due process was violated by the cumulative effect of state trial errors."  Because Kitchen has failed to state any claim for habeas relief, there can be no "cumulative error."  I also **DENY** habeas corpus relief based on that claim.

more a question of West Virginia law than one of federal due process." *Id.* Furthermore, the court explained that the principle of requiring instructions limiting jury discretion in capital cases does not extend to life sentences. *Id.* (citing *Lockett v. Ohio*, 438 U.S. 586, 603 (1978)). Moreover, "[t]he [Supreme] Court has required that the category of mitigating factors and evidence in a capital sentencing proceeding remain open-ended. So too West Virginia may permissibly decide that 'mercy' is one of those words that speaks in the end for itself, and that definition may ultimately limit the generosity with which mercy is granted." *Id.* at 118. Therefore, the court **DENIES** habeas relief on the ground that the petitioner's due process rights were violated. The petitioner does not explain how the failure to provide guidelines to the jury violated his Sixth Amendment rights, and the court **DENIES** relief on those grounds as well.

F. *Ground Seven*

In Ground Seven of his § 2254 petition, Kitchen argues that there was insufficient evidence to convict him of first degree murder. Once again, the court can deny the claim on the merits even though it is unexhausted. 28 U.S.C. § 2254(b)(2). In *Jackson v. Virginia*, the Supreme Court concluded that when assessing a sufficiency of the evidence contention, a court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements . . . beyond a reasonable doubt." 443 U.S. 307, 319 (1979). The *Jackson* Court emphasized that a court assessing a sufficiency contention must "give[] full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony." *Id.* Under *Jackson*, therefore, I must recognize the jury's resolution of any conflicting testimony, and the jury resolved any conflicts against Kitchen. I therefore **FIND** that Kitchen has not met the *Jackson* standard, and **DENY** him

habeas corpus relief based on his claim that the evidence presented at trial was insufficient to support his convictions.

      G.  *Ground Eight*

      In Ground Eight of his § 2254 petition, the petitioner asserts that the trial court's instruction to the jury that malice may be inferred by the use of a deadly weapon impermissibly shifted the burden of proof to the defendant.[3]  Notwithstanding the failure to exhaust this claim, § 2254(b)(2) permits a court to deny a petition on the merits.

      Under the due process provisions of the Fourteenth Amendment, a state cannot shift the burden of disproving an element of a crime to the defendant.  *See Mullaney v. Wilbur*, 421 U.S. 684 (1975).  The Supreme Court has distinguished, however, between a mandatory presumption that instructs the jury that it must infer the presumed fact if the state proves predicate facts and a permissive inference that "suggests to the jury a possible conclusion to be drawn if the State proves predicate facts, but does not require the jury to draw that conclusion."  *Francis v. Franklin*, 471 U.S. 307, 314 (1985).  A permissive inference "violates the Due Process Clause only if the suggested conclusion is not one that reason and common sense justify in light of the proven facts before the jury."  *Id.* at 314-15.  The court must analyze the specific language challenged as well as the context of the charge as a whole.  *Id.*

      In this case, the inference is non-mandatory.  The instruction states that, "malice and intent may be inferred by the jury by a person's intentional use of a deadly weapon, under circumstances which the jury does not believe provides Defendant excuse, justification or provocation for his conduct."  (Petition, 46 [Docket 3].)  A few sentences later, the court

---

[3] Petitioner cites this portion of the jury instruction in his Petition.  (Petition, 46 [Docket 3].)  This section is not, however, included in the trial transcript.  The court assumes that this instruction was one of the State's enumerated instructions that was only referred to by number, and not quoted in its entirety in the transcript.

explained that, "You are not obliged however and you may not find the Defendant guilty, unless you are satisfied that the State has established malice and intent beyond a reasonable doubt." (*Id.*)  Here the permissive inference was justified by reason and common sense in light of the facts proven at trial.  *See Francis*, 471 U.S. at 314-15.  Additionally, in this specific instruction and in the jury instructions as a whole, the court emphasized the permissive nature of the inference as well as the State's burden to prove each element beyond a reasonable doubt. Therefore, Kitchen's due process rights were not violated by the jury instructions.  I therefore **DENY** him habeas corpus relief under 28 U.S.C. § 2254 based on Ground Eight.

  H.  *Certificate of Appealability*

  Finally, the court has considered whether to grant a certificate of appealability, as required by Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts.  A certificate shall not issue unless there is "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The standard is satisfied only upon a showing that reasonable jurists would find that any assessment of the constitutional claims by this court is debatable or wrong and that any dispositive procedural ruling is likewise debatable.  *Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Rose v. Lee*, 252 F.3d 676, 683-84 (4th Cir. 2001).  I **FIND** that the governing standard under § 2253(c)(2) is not satisfied in this instance.  Accordingly, a certificate of appealability is **DENIED**.

**IV. Conclusion**

  For the foregoing reasons, the court **ADOPTS** and incorporates herein the Proposed Findings and Recommendation of the Magistrate Judge [Docket 18], **GRANTS** the respondent's

Motion for Summary Judgment [Docket 15], and **ORDERS** that the Petition for Habeas Corpus relief [Docket 3] be **DISMISSED** and **STRICKEN** from the docket.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:          September 28, 2011

Joseph R. Goodwin, Chief Judge